

# THE ATTORNEY GENERAL
## OF TEXAS
### AUSTIN 11, TEXAS

rald C. Mann
XIXXXXIXXXXX
ORNEY GENERAL

| | |
|---|---|
| Hon. George H. Sheppard | Opinion No. O-4167 |
| Comptroller of Public | Re: Whether the described expense |
| Accounts | accounts, incurred for purposes au- |
| Austin, Texas | thorized by the Board of Regents of |
| | the University of Texas, may be |
| Dear Sir: | allowed for payment. |

You have requested a legal opinion from this department as follows:

"I am attaching hereto a complete file covering expense accounts of Ed Syers, Executive Assistant of the Public Relations Department of the University of Texas, and Hulon W. Black, Director of the University Development Board of the University of Texas.

"Before approving these expense accounts for payment against the local funds of the University this department desires your opinion as to whether the Board of Regents is authorized to spend its money for the purposes set forth in these expense accounts."

One expense account submitted with your letter, that of Mr. Ed Syers, with the title of Executive Assistant of the Public Relations Department of the University of Texas, is stated to have been for the following object:

"Trip to Galveston to aid installation of press relations division at medical branch at Galveston; to publicize school-opening convocation at medical branch and to prepare folder of publicity releases on medical branch. Conference with Dean Spies, Williams, Mr. Silas Ragsdale, Galveston News-Tribune. Conferences were held with Silas Ragsdale, Galveston News-Tribune Managing Editor; Lloyd Gregory, Houston Post Managing Editor, and M. E. Walter, Houston Chronicle City Editor, regarding medical branch publicity."

The other expense account, that of Mr. Hulon W. Black, with the title of Director of the University Development Board of the University of Texas, is stated to have been for the following object:

"To pursue various aspects of the Board's business including interview with Dr. R. G. Caldwell in Boston;

presentation of radio project; cultivation of officials of Rockefeller Foundation and General Education Board; conferences with certain potential donors; organization of the Board's committee in New York; further presentation of radio project and various other necessary calls in Washington, etc."

Regarding the position occupied by Mr. Syers, we have been furnished the following information.

The Department of Public Relations at the University was established by the Board of Regents as a department in 1939. It was an outgrowth of the committee on public information, the office of publicity, and the division of public lectures and publicity, each of which originated in the Extension Division in 1912. The office of publicity was first established as a separate administrative function in 1920. Following exhaustive recommendations prepared by a special committee of the general faculty in 1937, and adopted by the general faculty, and pursuant to recommendations made to the Board of Regents by the President of the University, the Public Relations Department was established by the Board of Regents in July, 1939, as an integral part of the University.

The function, purpose and necessity for the Department of Public Relations are described as follows by the President of the University:

"An institution supported by the State has the obligation of making regular reports to the people of what is taking place or is contemplated. The University of Texas in common with all other major universities, both state-supported and private, maintains an organized bureau for public information and service. The purpose of this department is to keep open the channels of information in regard to the university's activities, to cooperate in the planning of programs of public service, and to disseminate news and articles of educational value. Such a department makes a state university in reality a public institution. If information on the university's offerings are not made public, much of the usefulness of the whole educational program is nullified. Media used mostly for the dissemination of university information and educational articles are the newspaper, magazine, and radio. Perhaps equally important in giving out information in regard to the educational offerings of the university are the conferences that are held, the letters that are written, the literature published and the personal visits that are made. University press releases are sent regularly to the press association and newspaper correspondent in Austin and to the State

daily and weekly newspapers."

Mr. Syers' expense account represents a trip to Galveston where the medical branch of the University is located. It was made in furtherance of the program of the Public Relations Department as it pertained to that branch of the University. We are advised that the medical branch had no public relations department or personnel. We are further advised that the trip was for purposes in addition to those described in the expense account, quoted above, and included the gathering of information on the new cancer program and the new tropical medical program fostered by the medical branch of the University.

The Development Board of the University, of which Mr. Black is Director, was established by the Board of Regents of the University of Texas on May 31, 1939. Budgets for the Board were approved by the Regents for the fiscal years of 1938-1939; 1939-1940; and 1941-1942. The resolution establishing the Development Board defined its purpose as being to "develop and carry forward a program for the development of the University through gifts and endowments." The trip represented by Mr. Black's expense account was for the purpose of furthering plans for gifts and bequests to the University.

Under recent date this department was written as follows by Dr. Homer P. Rainey, President of the University, concerning the two departments under review:

"I can say without any hesitation whatsoever that both I and the Board of Regents regard these two departments as among the most important in the University. Both are contributing some outstanding values to the development of the University, and it would be a serious handicap to the University if their work were impaired."

Articles 2584 and 2585, Revised Civil Statutes of Texas, read in such order as follows:

"Article 2584. The government of the University of Texas shall be vested in a Board of Regents composed of nine persons. They shall elect a chairman from their number who shall serve at the pleasure of the board. The State Treasurer shall be the treasurer of the University. The board shall have the right to make and use a common seal and may alter the same at pleasure.

"Article 2585. They shall establish the departments of a first-class university, determine the offices and professorships, appoint a president, who shall, if they think it advisable, also discharge the duties of a professor, appoint the professors and other officers, fix their

Hon. George H. Sheppard, page 4  (O-4167)

respective salaries; and they shall enact such by-laws,
rules and regulations as may be necessary for the suc-
cessful management and government of the University;
they shall have power to regulate the course of instruc-
tion and prescribe by and with the advice of the profes-
sors, the books and authorities used in the several de-
partments, and to confer such degrees and to grant such
diplomas as are usually conferred and granted by univer-
sities."

Regarding the authority thus vested in the Board of Re-
gents of the University of Texas under these statutes, the Commis-
sion of Appeals of Texas in the case of Foley vs. Benedict, 55
S.W.(2d) 805, opinion adopted by the Supreme Court, has declared:

"By the same statute, the Board is also authorized
to enact all such by-laws, rules and regulations as may
be necessary to the government of the University. By and
with the consent of the faculty the Board of Regents has
enacted the rule above quoted; and, further carrying out
the mandate of the State, they have adopted courses of
study to be pursued in the school of medicine. Since the
Board of Regents exercises delegated powers, its rules are
of the same force as would be a like enactment of the Leg-
islature, and its official interpretation placed upon the
rule so enacted becomes a part of the rule. West Texas
Compress and Warehouse Company vs. R. Company (Tex.Comm.
of App.) 15 S.W.(2d) 558, 560. ***

"The Legislature of this State having lodged the power
with the Board of Regents to enact rules and regulations
as may be necessary for the successful management and gov-
ernment of the University, they shall have power to adopt
such rules and to regulate the course of instruction, and
prescribe, by and with the advice of the faculty, the books
and authorities used in the several departments. That au-
thority rests with the Board of Regents and the faculty as
provided for by statute; and, if a change or modification
is desired in the rules and regulations, it is a matter for
the consideration of the Legislature. The courts will not
interfere therewith in the absence of a clear showing that
they have acted arbitrarily or have abused the authority
vested in them. The great weight of authority sustain this
doctrine. ***"

House Bill No. 272, Acts of the Forty-seventh Legisla-
ture, is the appropriation bill for the educational institutions
of higher learning in Texas for the biennium ending August 31,
1943. Section 1(a) of this appropriation bill reads as follows:

"That all balances in the institutional funds of the
several State institutions named in this Act, at the close

of the fiscal year ending August 31, 1941, including
balances in their revolving funds at that time, and
the entire income to said funds during each of the two
fiscal years ending August 31, 1942, and August 31,
1943, which are not otherwise appropriated for either
or both of said fiscal years are hereby appropriated
for the support, maintenance, operation, and improve-
ment of said State institutions during each of the said
fiscal years, respectively."

Subsection (3) of the general riders to this appropria-
on bill provides as follows:

"Institutional Receipts.  No property belonging
to any of the institutions herein provided for, or any
agency thereof, shall be sold or disposed of without
the consent of its governing board, and all proceeds
from the sale of such property, from labor performed,
from the sale of materials, crops and supplies, from
fees, and any and all other receipts shall become and
are hereby appropriated as maintenance or contingent
fund to be expended under the direction and with the
approval of the governing board having jurisdiction.
Said governing boards are authorized to use out of
the proceeds of said receipts and funds, in accordance
with the provisions of this Act, such amounts as they
shall deem necessary for the support, maintenance,
operation and improvements of said institutions.  Any
balances remaining to the credit of any of said in-
stitutional local funds at said institutions or in the
State Treasury at the end of any fiscal year  are here-
by reappropriated for the above-mentioned purposes for
the succeeding year."  (Emphasis added)

In subsection (6) appear these provisions:

"* * *  No traveling expenses shall be incurred by
board members, heads of institutions, or by any employee
of any of the schools, or other agencies named herein,
inside or outside of the boundaries of the State of Texas,
except for State business, and no travel shall be per-
formed outside the State except upon  the advance written
consent of the school's Board of Regents or directors.
The term 'maintenance' may include the traveling expenses.
***"   (Emphasis added)

From this review we may make the following observations.

First.  The Legislature has not assumed to manage and
ntrol the University of Texas directly, but has delegated the
wernment of this institution to its Board of Regents.

748

Second. The statutes expressly vest the Board of Regents with the power and authority to establish departments in the University and to determine the offices thereof. They enjoin upon the Board the duty of enacting such by-laws, rules and regulations as may be necessary for the successful management and government of the University.

Third. The Supreme Court of Texas, through its Commission of Appeals, has clearly recognized and upheld the validity of these statutes and has vouchsafed to the rules enacted by the Board of Regents in the exercise of its delegated powers the force and effect of like enactments of the Legislature.

Fourth. The Board of Regents of the University has established both the Public Relations Department and the Development Board of the University whereunder both Mr. Syers and Mr. Black serve in their official capacities.

Fifth. Since the establishment of these departments by the Board of Regents, subsequent legislatures of the State have neither changed nor modified the action of the Regents in such particulars nor in any manner circumscribed or restricted the authority existent in the Board by virtue of Articles 2584 and 2585, supra.

Sixth. The Forty-seventh Legislature in House Bill No. 272 expressly provided that, "***All proceeds***from fees, and any and all other receipts shall become and are hereby appropriated as maintenance or contingent fund to be expended under the direction and with the approval of the governing board having jurisdiction. Said governing boards are authorized to use out of the proceeds of said receipts and funds, in accordance with the provision of this Act, such amounts as they shall deem necessary for the support, maintenance, operation and improvement of said institutions ***The term 'maintenance' may include the traveling expenses***" (Emphasis added)

Seventh. The Forty-seventh Legislature expressly prohibited the allowance of traveling expenses inside or outside of the boundaries of the State of Texas except when such expenses shall have been incurred for "State business."

If the expenses represented by the expense accounts of Mr. Syers and Mr. Black were incurred for State business, they may be allowed and paid.

A decision upon this question involves a consideration of whether the creation of the departments involved was within the powers granted to the Board of Regents of the University, and whether the objects and purposes for which the expenses were incurred were legitimate activities in furtherance of the programs that inaugurated.

749

"State business" signifies the accomplishment of a governmental function; it requires that the means and method adopted be reasonably necessary; it implies that the particular governmental function involved be one directly entrusted to the institution or department assuming its accomplishment.

The Legislatures of Texas have not undertaken to define "State business" in relation to the University of Texas. The government of that institution, a serious and complex responsibility, has been entrusted to the Board of Regents and to that Board has been given broad and comprehensive powers. It is manifest that the Administration and Board of Regents of the University are in a superior position to know and understand, and to accomplish, the successful management and government of the University. Upon them has been imposed the responsibility therefor. The presumption is always in favor of the reasonableness and legality of that which they do. As said by the court in Foley v. Benedict, supra, "the courts will not interfere therewith in the absence of a clear showing that they have acted arbitrarily or have abused the authority vested in them." This does not mean, of course, that acts beyond the law should be upheld. It does mean, however, that this department should be restrained, as are the courts, in overturning the deliberate and considered acts of those entrusted with, and peculiarly equipped for, the administration of this State institution.

To disallow the expenses under review would mean, obviously, a destruction of the Public Relations Department and Development Board of the University created by the Board of Regents and which have been functioning for a number of years without challenge or modification by the Legislature. This is true because the expenses represent activities which are the essence of the departments themselves. If the expenses incurred, for the purposes for which they were incurred, are illegal, necessarily the departments were illegally created because that for which the expenses were incurred is the accomplishment of that for which the two departments were established.

It is our opinion that public relations appertaining to the University of Texas, and the development of the University of Texas, as represented in the Public Relations Department and the Development Board, constitute valid functions of the University; that the means and method adopted for the accomplishment of these functions, represented in the expense accounts before us, are reasonably and substantially related to the functions of government entrusted to this educational institution, and consistent with the authority granted to the governing board of the institution.

It is our opinion that the expenses incurred as represented in the expense accounts submitted to us of Mr. Syers and

Mr. Black were for State business and therefore may be allowed and paid.

We are returning the expense accounts herewith.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ Zollie C. Steakley
Zollie C. Steakley, Assistan

APPROVED DEC 11, 1941
/s/ Grover Sellers
FIRST ASSISTANT ATTORNEY GENERAL

APPROVED: OPINION COMMITTEE
BY:        BWB, CHAIRMAN

ZCS:ej:wb
Encls.